DISTRICT COURT OF GUAM

| | |
|---|---|
| SHERIF A. PHILIPS, MD,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL BERMAN and DANIEL BERMAN,<br><br>Defendants. | CIVIL CASE NO. 23-00017<br><br>**REPORT & RECOMMENDATION**<br>re Defendants' Motion to Dismiss,<br>Motion for Sanctions and<br>Motions for Judicial Notice<br>(ECF Nos. 6, 14, 21, 25 and 27) |

Before the court are a Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) and Failure to State a Claim Upon Which Relief can be Granted under Rule 12(b)(6) (the "Motion to Dismiss") and a Motion for Sanctions, filed by defendants Michael Berman and Daniel Berman (collectively, the "Defendants"). *See* ECF Nos. 6 and 14. The motions have been fully briefed, and oral argument will not aid the court in reaching a decision on the pending matters. Having reviewed the case file and related filings and based on relevant authority, the court now issues this Report and Recommendation to grant the Defendants' Motion to Dismiss and Motion for Sanctions.

**I.    Background**

This appears to be yet another attempt by the Plaintiff to re-litigate claims he previously brought in both federal and state courts that stem from the suspension of his medical privileges at Pitt County Memorial Hospital ("PCMH"), located in North Carolina. For a full discussion of the Plaintiff's previous suits, see *Philips v. Pitt County Mem'l Hosp., Inc.,* No. CV 18-00046, 2019 WL 4794514, at *1 (D. Guam Sept. 30, 2019), R. & R. adopted as modified, No. CV 18-00046, 2019 WL 5963927 (D. Guam Nov. 13, 2019), aff'd, 855 F. App'x 324 (9th Cir. 2021). In summary, the

three lawsuits brought by the Plaintiff in the U.S. District Court for the Eastern District of North Carolina were dismissed. *See Philips v. Pitt Cnty Mem'l Hosp., Inc.*, 503 F. Supp.2d 776 (E.D.N.C. 2007) *("Philips I")*, *Philips v. Pitt Cnty Mem'l Hosp., Inc.*, 503 F. Supp.2d 785 (E.D.N.C. 2007) ("*Philips II*"); and *Philips v. N.C. State*, No 5:15-CV-0095-F, 2015 WL 9462095 (E.D.N.C. Dec. 28, 2015) ("*Philips IV*"). With regard to the Plaintiff's claims brought in the North Carolina state court in 2009 ("*Philips III*"), the trial court dismissed the Plaintiff's claims for fraud and tortious interference with contract, and later granted the defendants' motion for summary judgment on the remaining causes of action. *See Philips v. Pitt Cnty Mem'l Hosp. Inc.*, 731 S.E.2d 462, 466 (N.C. Ct. App. 2012). After the *Philips III* rulings were affirmed by the North Carolina Court of Appeals, and the North Carolina Supreme Court denied discretionary review, *id.* at 473 and *Philips v. Pitt Cnty Mem'l Hosp. Inc.*, 734 S.E.2d 862 (2012), the defendants sought and were awarded their attorneys' fees and costs. *See Philips v. Pitt Cnty Mem'l Hosp. Inc.*, 775 S.E.2d 882 (N.C. Ct. App. 2015). The Plaintiff appealed the order granting attorneys' fees and costs, but the North Carolina Court of Appeals affirmed and the Supreme Court of North Carolina denied review. *Id.* at 885, *writ denied, review denied, appeal dismissed*, 778 S.E.2d 84 (2015).

In May 2018, PCMH filed a complaint in the Superior Court of Guam, seeking to enforce the North Carolina state court judgment that awarded attorneys' fees and costs. *See Pitt Cnty Mem'l Hosp. v. Philips*, Superior Court of Guam Civil Case No. 0478-18 (the "Enforcement Action"). The Defendants represent PCMH in the Enforcement Action.

On December 26, 2018, the Plaintiff filed suit in this court ("*Philips V*") against PCMH, two of its doctors and two attorneys that represented PCMH, asserting that this court had jurisdiction pursuant to 28 U.S.C. § 1331 (federal question). *See Philips v. Pitt County Mem'l Hosp., Inc.,* No. CV 18-00046. The court granted the defendants motion to dismiss, finding a lack of federal question jurisdiction, a lack of personal jurisdiction over the defendants and that even if the complaint was construed as "an inartful attempt to invoke this [c]ourt's removal jurisdiction," the removal was untimely and barred by the forum defendant rule. *Philips v. Pitt Cnty. Mem'l Hosp., Inc.*, No. CV 18-00046, 2019 WL 5963927, at *2 (D. Guam Nov. 13, 2019), aff'd, 855 F. App'x 324 (9th Cir. 2021).

During the course of the Enforcement Action, the Superior Court entered judgment against the Plaintiff, and PCMH then sought to levy on the Plaintiff's 5% membership interest in RSA-Tumon, LLC ("RSA-Tumon"). *See RSA-Tumon, LLC v. Pitt Cnty. Mem'l Hosp., Inc.*, No. CV 20-00025, 2021 WL 1215777, at *1 (D. Guam Mar. 30, 2021). On July 7, 2020, RSA-Tumon initiated an interpleader action in the Superior Court of Guam, naming both PCMH and the Plaintiff as defendants in that action. *Id.* On July 13, 2020, the Plaintiff filed a Motion to Transfer in this court, seeking to remove the interpleader action to this court ("*Philips VI*") on the basis of diversity jurisdiction. *Id.* The court ultimately granted RSA-Tumon's motion for remand, finding that removal was improper because there was no complete diversity between the parties. *Id.* at *2.

On June 16, 2022, the Plaintiff again filed another complaint in this court, this time against the Judiciary of Guam. *See Sherif Antoun Philips, M.D. v. Guam Courts*, No. CV 22-00014 ("*Philips VII*"). The court determined that the Plaintiff was essentially seeking appellate review of the Superior Court of Guam's decision, which was precluded by the *Rooker-Feldman* doctrine and dismissed the complaint for lack of jurisdiction. *Philips v. Guam Cts.*, No. CV 22-00014, 2022 WL 17551558, at *2 (D. Guam Dec. 9, 2022), aff'd sub nom. *Philips v. Judiciary of Guam*, No. 22-16919, 2023 WL 4994523 (9th Cir. Aug. 4, 2023).

Finally, on June 20, 2023, the Plaintiff filed the current Complaint against the Defendants ("*Philips VIII*"). *See* Compl., ECF No. 1. Therein, the Plaintiff summarily recounted the previous North Carolina action that awarded PCMH attorneys' fees and costs, which he claims "wasn't final," and mentioned matters that occurred in the Enforcement Action, including the Superior Court of Guam's granting of a motion for summary judgment in PCMH's favor, and this court's rulings in *Philips V* and *Philips VII* and the subsequent appeals. The Plaintiff asserted claims for "Due Process, Tort, Slander, Harassment, Fraud, Defamation, Fraud In The court, and Injunction (sic) Relief," alleging that the Defendants "kept filing motions" which were served on the Plaintiff at his clinic by marshals and "[a]lways ask[ed] for sanctions" against him "to annoy, provoke or otherwise, cause emotional distress" upon the Plaintiff. *Id.* at ¶¶ 34-36 and 39.

On July 3, 2023, the Defendants sent the Plaintiff a Notice of Safe Harbor and Rule 11 Motion, requesting that the Plaintiff withdraw or dismiss his Complaint within 21 days or else the

Defendants would move this court to impose sanctions against him on the basis that the Complaint was "frivolous, meritless and . . . filed for an improper purpose." Second Decl. Daniel J. Berman at ¶ 3 and Ex. A thereto, ECF No. 16. When the Plaintiff failed to dismiss this action, the Defendants then filed the instant Motion to Dismiss, asserting that this court lacks subject matter jurisdiction and that the Complaint fails to state a plausible claim. *See* Defs.'s Mem. P. & A. Supp. Mot. Dismiss, ECF No. 7. The Defendants also requested that the court sanction the Plaintiff and award the Defendants all costs and legal expenses associated with defending this action. *See* Defs.'s Mem. P. & A. Supp. Mot. Sanctions, ECF No. 15.

## II. Analysis

The Defendants move to dismiss pursuant to Rule 12(b)(1) based on a lack subject matter jurisdiction,[1] asserting there is no diversity between the parties. Because the Plaintiff is proceeding *pro se*, the allegations in the Complaint are awkwardly phrased, and it is unclear whether he is asserting that this court's jurisdiction is based on a federal question or diversity of citizenship between the parties. The Complaint asserts that the Plaintiff is a resident of St. Petersburg, Florida, while the Defendants are residents of Guam. Compl. at 1, ECF No. 1. Additionally, under the heading "Jurisdiction," the Complaint asserts that this court has jurisdiction "over local matters as well as Federal Claims, over 28 U.S.C[.] Claims, and Federal Claims concerning Constitution Treaties and Federal Law." *Id*. Mindful of the Ninth Circuit's instructions to "liberally . . . construe the 'inartful pleading' of *pro se* litigants," *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), as amended (May 22, 1992), the court will examine whether either basis for jurisdiction exists.

### A. Legal Standard - Subject Matter Jurisdiction

"It is a fundamental principle that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A court must presume lack of jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of*

---

[1] The Defendants' Motion to Dismiss also asserts that dismissal is warranted under Rule 12(b)(6) because the Complaint fails to state a facially plausible claim to relief. Because the jurisdictional issue is dispositive, there is no need for the court to discuss the Defendants' second basis for dismissal.

*Sherif A. Philips, MD v. Michael Berman and Daniel Berman*. Civil Case No. 23-00017
Report and Recommendation re Defendants' Motion to Dismiss and Motion for Sanctions      page 5 of 18

*America*, 511 U.S. 375 (1994). "The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613-14 (9th Cir. 2016).

A defendant may raise either a facial or a factual challenge to the court's subject matter jurisdiction under Rule 12(b)(1). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). In a factual attack, such as the one raised in the Defendants' Motion to Dismiss, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a factual attack, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal citation omitted). "Where a factual motion to dismiss is made and only written materials are submitted for the court's consideration (*i.e.*, no hearing is held), a plaintiff need only establish a prima facie case of jurisdiction." *Rancheria v. Bonham*, 872 F. Supp. 2d 964, 968 (N.D. Cal. 2012) (citing *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1985)).

B.  Whether Federal Question Jurisdiction Exists[2]

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law either where federal law creates the cause of action or where plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006).

Here, the Complaint broadly asserts that this court "has jurisdiction over local matters." Compl. at 1, ECF No. 1. As stated above, federal courts are courts of limited jurisdiction, and thus, the Plaintiff has the burden of both pleading and proving jurisdiction. It is not clear whether the

---

[2] This issue was only briefly addressed in one paragraph of the Defendants' motion, *see* Defs.'s Mem. P. & A. Supp. Mot. Dismiss at 9-10, ECF No. 7, and not addressed at all in the Plaintiff's opposition. *See* Pl.'s Opp'n, ECF No. 11.

*Sherif A. Philips, MD v. Michael Berman and Daniel Berman.* Civil Case No. 23-00017
Report and Recommendation re Defendants' Motion to Dismiss and Motion for Sanctions
page 6 of 18

Complaint contains any claim under federal law,[3] since the Plaintiff does not explicitly allege any specific claim for relief except a cursory reference to "due process." Liberally construing the Plaintiff's inartful pleading, the court will assume that the Plaintiff meant to bring a claim under the Due Process Clause of either the Fifth or Fourteenth Amendment.[4]

In relevant part, the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "[T]he Fifth Amendment's due process clause only applies to the federal government." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). Here, the Plaintiff has not brought suit against the federal government. Thus, any due process claim under the Fifth Amendment against the Defendants would be meritless and would not support federal question jurisdiction.

The Fourteenth Amendment's Due Process Clause provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. This protection was extended to Guam under the Organic Act. 48 U.S.C. § 1421b(e) and (u). *See also Guam Soc. of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1370 (9th Cir. 1992), as amended (June 8, 1992). Because the Fourteenth Amendment is directed at states, it can be violated "only by conduct that may be fairly characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 provides a federal remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42. U.S.C. § 1983. There are two essential elements to a section 1983 action: first, that the defendant acted under "color of law;" and, second, that the defendant's conduct deprived the plaintiff of a federally protected right.

Here, the Complaint does not reference Section 1983 nor does it assert that the Defendants are state or local government officials. Instead, the Defendants appear to be private lawyers representing PCMH in the Enforcement Action. As non-government attorneys, the Defendants are

---

[3] The other claims raised in the Complaint – Tort, Slander, Harassment, Fraud and Defamation – do not arise under the Constitution or federal law.

[4] The court notes that the Plaintiff's opposition to the Defendants' Motion to Dismiss states "Federal Question Jurisdiction (Due Process, Fifth Amendment and Fourteenth Amendment)." Pl.'s Opp'n at 12, ECF No. 11.

not ordinarily subject to the Constitution's constraints. Nevertheless, the court will apply the two-step framework developed in *Lugar* to determine whether the conduct of a private party may be attributed to that of the government for constitutional purposes. *Lugar*, 457 U.S. at 937. Under this framework, the court first asks "whether the alleged constitutional violation was caused by the "exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible." *Id.* If the answer is yes, the court then analyzes whether "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Id.* There are four different tests used to determine the answer to the second step of the *Lugar* framework: (1) the public function test, (2) the state compulsion test, (3) the nexus test, and (4) the joint action test. *Id.* at 939.

Applying the above framework, the court must first determine whether the claimed deprivation resulted from the exercise of a right or privilege having its source in state authority. The Complaint's assertions are ambiguous because it does not reference any Guam statute or rule of conduct imposed by the Judiciary of Guam. The Complaint asserts that (i) "the Guam Superior Court denied all plaintiff's motions prior to oral argument," (ii) that "multiple appeal[s]" were filed with the Guam Supreme Court and "[d]enied at the clerk level for administrative rules, not on [t]he [m]erit," (iii) that PCMH's "local lawyer kept filing frivolous, malicious and harassment motion (subpoena) at his favorite court (up to 85 motions)", which were "accepted by the local court even though he wasn't [in] compliance with the local rule," (iv) that the Plaintiff was served with a court order to appear for a court hearing on July 1, 2022, and when he appeared for the hearing, he was informed that it was canceled by court order, (v) that he was served by mail with an order directing that he appear in court on October 7, 2022, but was later served by the Defendants with a notice of hearing that noted a different date (December 2, 2022) for the court hearing, and (vi) that the "local lawyer manipulated poor knowledge about plaintiff's case progress at Guam Satellite Court to get [a] Fraudulent Order." Compl. at ¶¶ 21, 22, 33, 46-48, 53-54, 56 and 59, ECF No. 1. It is not clear to the court whether the Plaintiff is challenging the constitutionality of a specific Guam statute or a judicial rule or whether he is alleging the statute or rule was misapplied as to him. Even construing the Plaintiff's allegations liberally, the court cannot plausibly conclude that the Plaintiff

suffered any constitutional violation that was caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible.

Assuming *arguendo* that the court answered "yes" to the first prong of the *Lugar* framework, the court must move to the second prong and determine whether "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." The court will apply the four tests listed above to determine whether the Defendants' actions amount to state action.

### 1. *Public Function Test*

"Under the public function test, 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'" *Lee v. Katz*, 276 F.3d 550, 554-55 (9th Cir. 2002) (citing *Evans v. Newton*, 382 U.S. 296, 299 (1966)). "To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental." *Id.* The Supreme Court "has stressed that 'very few' functions fall into that category." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). For example, the Supreme Court has ruled that a public defender does not act "under color of state law" in performing a lawyer's traditional functions as counsel to an indigent defendant in a state criminal proceeding. *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-19 (1981).

In the instant case, the Defendants are private attorneys representing a private hospital in seeking to enforce a state court judgment on Guam by bringing the Enforcement Action in the Superior Court of Guam. The function here is representation of a judgment creditor. This function has not traditionally and exclusively been performed by the government. Thus, the Defendants' actions do not constitute state action under the public function test.

### 2. *State Compulsion Test*

State action may be found under the state compulsion test where the state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

The Complaint does not contain any allegation that a state law, rule or custom compelled, coerced, or encouraged the Defendants to take the actions they did against the Plaintiff. The Defendants' actions do not satisfy the state compulsion test.

### 3. *Nexus Test*

There are two different versions of the nexus test. The first version asks whether there is "pervasive entwinement of public institution and public officials in the [private actor's] composition and workings." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001). Under this test, the court considers various factors, such as whether the private entity relies on public funding, whether it is comprised of mainly public officials, and whether said public officials dominate the decision making of the entity. *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023).

Based on allegations in the Complaint, none of these factual considerations are present in this case. The Defendants operate a private law firm and do not rely on public funding. Because they are private attorneys, no public official dominate their decision making.

The second version of the nexus test asks whether public officials have "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). "One circumstance in which this version of the test will be satisfied is when government officials threaten adverse action to coerce a private party into performing a particular act." O'Handley, 62 F.4th at 1157. Again, the Complaint does not allege any threat or coercion by a government official that led the Defendants to take the actions they did.

Finally, the second version of the nexus test may also be satisfied

> when certain forms of government encouragement are present. The critical question becomes whether the government's encouragement is so significant that we should attribute the private party's choice to the State, out of recognition that there are instances in which the State's use of positive incentives can overwhelm the private party and essentially compel the party to act in a certain way.

*Id.* at 1158.

Here, the Plaintiff fails to allege that anything of this sort occurred here. The Complaint does not allege that the Superior Court encouraged or provided an incentive to the Defendants to

take the actions they did in the Enforcement Action. Accordingly, the Defendants' actions do not satisfy the state compulsion test.

    4. *Joint Action Test*

Under this last test, a plaintiff can show joint action either by "proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012). The conspiracy approach to joint action requires the plaintiff to show a "meeting of the minds" between the government and the private party to "violate constitutional rights." *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). "[J]oint action exists when the state has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity." *Tsao*, 698 F.3d at 1140. "This test is intentionally demanding and requires a high degree of cooperation between private parties and state officials to rise to the level of state action." *O'Handley*, 62 F.4th at 1159-60.

In this case, the Complaint fails to allege any "meeting of the minds" between the Defendants and any member or employee of the Judiciary of Guam to violate the Plaintiff's constitutional rights. In fact, the allegations in the Complaint support a contrary conclusion – that there was no such "meeting of the minds" – because the Plaintiff alleges that the Defendants committed "fraud in the court" by serving him with a notice of hearing that contained a date different from the hearing date set forth in a court order, by "lying (untruthful) in front of the court regarding the Guam Supreme Court order on March 31, 2023," and by "manipulat[ing] poor knowledge about plaintiff's case progress at Guam Satellite Court to [obtain a] Fraudulent Order." Compl. at ¶¶ 53-54, 56-57 and 59, ECF No. 1. Based on these assertions, the Plaintiff has not plausibly alleged any joint action between the Defendants and the government (*i.e.*, Judiciary of Guam) to violate the Plaintiff's constitutional rights.

In sum, even in light of the liberal pleading requirements applicable to *pro se* plaintiffs, the court finds that the actions taken by the Defendants did not constitute state action under both steps of the *Lugar* framework. The Plaintiff has not alleged a plausible Section 1983 claim against the Defendants, and thus the Complaint must be dismissed for lack of federal question jurisdiction.

C.     Whether Diversity Jurisdiction Exists

The next issue for the court to decide is whether federal diversity jurisdiction exists. Under federal law, the district courts are vested with original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between "citizens of different States." 28 U.S.C. § 1332(a)(1).

Before addressing whether there is diversity between the parties, the court notes the Complaint fails to demand a specific dollar amount. The "Conclusion" of the Complaint simply states that "the [P]laintiff ask[s] the court to grant his claim." Compl. at 9, ECF No. 1. The Plaintiff, as the party asserting diversity jurisdiction, has the burden of proof that the matter in controversy exceeds the $75,000 statutory minimum. While the Motion to Dismiss does not address this issue, the Plaintiff has not presented any evidence that would allow the court to conclude that the jurisdictional threshold has been met here.

Next, to establish citizenship for diversity purposes a party must be a citizen of the United States and be domiciled in a state of the United States. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). Courts are guided by several principles for this inquiry.

> First, the party asserting diversity jurisdiction bears the burden of proof. Second, a person is "domiciled" in a location where he or she has established a fixed habitation or abode in a particular place, and intends to remain there permanently or indefinitely. Third, the existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed.
>
> Finally, a person's old domicile is not lost until a new one is acquired. A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely.

*Id.* at 749-50 (internal quotations, citations and brackets omitted).

Here, the Complaint does not allege the parties' citizenship. Instead, the Complaint asserts that the "Plaintiff . . . is . . . residence (sic) of . . . Florida" and that the Defendants are "residence (sic) of Guam." Compl. at 1, ECF No. 1. The diversity jurisdiction statute, 28 U.S.C. § 1332(a), however, speaks of citizenship, not residency. It is not unusual for unrepresented parties to conflate "residence" with "domicile," but the two terms are not necessarily synonymous for purposes of diversity. *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). A person's state citizenship is determined by his state of domicile, not his state of residence. "A

person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

In his opposition to the Defendants' motion, the Plaintiff asserts that his "state of domicile is Florida." Pl.'s Opp'n at 12, ECF No. 11. The Defendants challenge this assertion and maintain that there is no diversity between the parties because the Plaintiff's domicile is Guam. The Defendants argue that the Plaintiff now claims to be domiciled in Florida "in order to create a false representation of diversity jurisdiction to this [c]ourt." Defs.'s Mem. P. & A. Supp. Mot. Dismiss at 3, ECF No. 7.

The Plaintiff's averment as to his domicile is plainly insufficient for diversity jurisdiction. "When the defendant raises a factual attack, the plaintiff must support [his] jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context." The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal citations and quotation marks omitted). "In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit 'affidavits or any other evidence properly before the court. . . . It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). Thus, the Plaintiff bears the burden of proving by a preponderance of the evidence that the parties are in fact diverse.

In determining a party's domicile, the court considers "objective facts" and "statements of intent are entitled to little weight when in conflict with facts." *Lew*, 797 F.2d at 750 (internal quotations omitted). Case law has set forth various objective factors relevant to this determining an individual's domicile, with no single factor controlling. *Id.* These factors include "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and

payment of taxes." *Id.*

In support of their motion to dismiss, the Defendants have provided the court with 22 exhibits consisting of the Plaintiff's tax records, letters written by him, his medical license renewal applications, payments to the Guam Board of Medical Examiners, and other court records. *See* Decl. Daniel J. Berman, ECF No. 8 and attachments thereto. Additionally, Mr. Berman declared under penalty of perjury that "no disclosure from [the Plaintiff] exists in writing of any street address, [d]eed to real property in Florida, [l]ease of real property in Florida, real property parcel number or taxes paid in the State of Florida, City of St. Petersburg." *Id.* at ¶ 27. Based on these exhibits, the Plaintiff has been living and working on Guam since mid-2007. On May 8, 2007, the Plaintiff wrote to the Guam Board of Medical Examiners ("GBME") requesting he be given hospital privileges at the Guam Memorial Hospital because "effective June 1, 2007," he would be "working full time with [the] American Dialysis Center, Inc.," located in "Upper Tumon, Guam," *Id.* at Ex. 4. This is consistent with the Plaintiff's May 2018 filing with the North Carolina state court where he sought to "cancel" a hearing before said court and stated that he was "a solo nephrologist whom (sic) lives in Guam for 11 years." *Id.* at Ex. 18. Even the Supreme Court of Guam in a March 2023 Order affirming that the Superior Court had personal jurisdiction over the Plaintiff stated that the Plaintiff "has been living and practicing medicine in Guam for nearly a decade." *Id.* at Ex. 17. The exhibits also show that the Plaintiff renewed his medical license with the GBME in 2017, 2019, 2021, with each license valid for a two-year period. *Id.* at Exs. 6-8, and 10-14. Finally, when the Plaintiff filed this action, he listed a Guam address on the face of the Complaint. *See* Compl. at 1, ECF No. 1.

Based on the objective evidence before the court, the Defendants have established that the Plaintiff was domiciled in Guam since 2007. The Plaintiff now asserts, however, that he is domiciled in Florida. "A domicile once acquired is presumed to continue until it is shown to have changed." *Mitchell v. United States*, 88 U.S. 350, 353 1874. A party alleging a newly acquired domicile must produce "substantial evidence" to rebut the presumption favoring his previously established domicile. *Lew*, 797 F.2d at 752. The Plaintiff has not presented the court with any evidence, let alone substantial evidence, that his domicile has changed to Florida by the time he

filed the instant Complaint. In light of all the evidence, considering the long-standing rule that diversity jurisdiction is to be strictly construed, *see Owen Equip. & Erection v. Kroger*, 437 U.S. 365, 377 (1978), and the presumption favoring an established domicile over a newly acquired one, the court concludes that the Plaintiff has not shown by a preponderance of the evidence that he was not a citizen of Guam at the time he filed the instant Complaint. Accordingly, the court finds that diversity jurisdiction is lacking over this controversy.

### D. Whether Amendment Would be Futile

The Ninth Circuit has cautioned that a "complaint should not be dismissed without leave to amend unless amendment would be futile." *Carolina Cas. Ins. Co. v. Team Equipment, Inc.*, 741 F.3d 1082, 1086 (2014) (citing *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004)). This is consistent with the policy of the federal rules that a court should "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Plaintiff may be able to cure the defect with regard to alleging an amount in controversy that exceeds the $75,000 threshold. Nevertheless, based on the Plaintiff's irrational and largely incoherent allegations in this case and the results of his prior three cases (*i.e, Philips V, VI and VII)*, the court finds that the amendment would be futile to cure the deficiencies noted above with regard to asserting a claim that arises under federal law or producing substantial evidence of a change in domicile. Moreover, as will be discussed below, amendment would only cause further undue delay and prejudice the Defendants.

### E. Whether Sanctions are Appropriate

Finally, the Defendants request that the court "impose Rule 11 sanctions on the Plaintiff and that it award all costs and legal expenses" associated with defending this suit to the Defendants. Defs.'s Mem. P. & A. Supp. Mot. Sanctions at 11, ECF No. 15. The Defendants argue that "the Complaint frivolously asserts that [the] Plaintiff . . . is not a resident of Guam or not a domicile of Guam in order to create a false representation of diversity jurisdiction of this court." *Id.* at 1. The Defendants contend that the Plaintiff sued the Defendants "in order to improperly vex, harass, and exacerbate legal expenses in [the Enforcement Action] and delay enforcement and payment on his

Judgment debt owed to PCMH in [the Enforcement Action]."[5] *Id.* at 8.  Mr. Berman asserts that he "will need to delay legal work" in the Enforcement Action.  Decl. Daniel J. Berman at ¶ 26, ECF No. 8.

Before actually filing the Motion for Sanctions with the court, in conformance with the procedures outlined in Rule 11(c)(2),[6] on July 3, 2023, the Defendants wrote to the Plaintiff and asserted that the Complaint was improperly filed and violated Rule 11(b)(1), (2) and (4).  Second Decl. Daniel J. Berman at ¶ 3 and Ex. A thereto, ECF No. 16.  Appended to this letter was a copy of the Defendants' yet-to-be-filed Motion for Sanctions and memorandum in support thereto.  *Id.* at ¶¶ 4-5.  The letter requested that the Plaintiff withdraw or dismiss the Complaint within 21 days, and if the Plaintiff failed to so act, the Defendants would file the Motion for Sanctions with the

---

[5] In support of the Motion for Sanctions, the Defendants also provided the court with copies of orders issued by the Supreme Court of Guam and the Superior Court of Guam and asked the court to take judicial notice of said orders.  *See* Third Decl. Daniel J. Berman at ¶3, ECF No. 21, and Defs.'s Mot. and Mem. Judicial Notice and Second Mot. and Mem. Judicial Notice, ECF Nos. 25 and 27.  Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, the court "may judicially notice a fact that is not subject to reasonable dispute because it: can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The court may take judicial notice of papers filed in state court and of state court orders.  *See Porter v. Ollison*, 620 F.3d, 955 n.1 (9th Cir. 2010); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (the court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").  Where a party requests judicial notice, and the court is supplied with the necessary information, the court "must" take judicial notice.  Fed. R. Evid. 201(c)(2).  Accordingly, the court recommends that the Chief Judge grants the Defendants' requests for judicial notice.

[6] This rule provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.  If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2).

court. *Id.* at Ex. A.

Instead of withdrawing or dismissing the Complaint as requested, on July 18, 2023 – before the expiration of the 21-day grace period, the Plaintiff filed a document entitled "Motion to Strike Rule 11; First Memorandum of Law; Consolidated and Mandate to Transfer to 9th Circuit Court of Appeal" (the "Motion to Strike").[7] *See* Pl.'s Mot. Strike, ECF No. 10. Attached to the Motion to Strike appear to be other documents the Plaintiff filed with the Guam Supreme Court and the United States Court of Appeals for the Ninth Circuit. It is difficult to discern the Plaintiff's rambling assertions in this filing, but it appears that the Plaintiff sought to strike the yet-to-be-filed Motion for Sanctions, arguing that it "was a good example of a frivolous and malicious motion out of the previous 90 motions . . . previously filed." *Id.* at 2. The Plaintiff concluded by asking the court to "consolidate his new claim and Mandate to Transfer To The Ninth Circuit Court of Appeal." *Id.* at 5.

Pursuant to Rule 11,

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Based on the court's discussion regarding the lack of diversity jurisdiction, the court finds that the Plaintiff's assertion in the Complaint that he is a resident of Florida and his further statement in his opposition to the Motion to Dismiss that his "state of domicile is Florida" have no

---

[7] Following the Defendants' filing of the Motion for Sanctions, the Plaintiff filed more motions to strike, *see* ECF Nos. 18, 19 and 28, and even a separate "Rule 11 Motion." *See* ECF No. 34. The court will issue a separate order on these motions.

evidentiary support and would not have evidentiary support even afer reasonable opportunity for further investigation and discovery. Aside from his bare bones averments, the Plaintiff has presented the court with no evidence to support his claim that his domicile has somehow changed from Guam – where he has been living and working since 2007 – to Florida. The Plaintiff has not produced any proof – no deed, no lease agreement, no tax record payments, no medical license, no driver's license and no bank records – that would evidence his physical presence in Florida and his intention to remain there indefinitely. Because his factual contention regarding his domicile is not supported by the evidence, his continued legal argument that diversity jurisdiction exists is not supported by established law and is otherwise frivolous and meritless.

Additionally, based on the record before it, the court finds that the instant suit was brought by the Plaintiff to harass the Defendants and unnecessarily delay the Enforcement Action being prosecuted by the Defendants against the Plaintiff. The Plaintiff and PCMH have been engaged in protracted litigation over his suspended medical privileges since 2005. The Defendants have been representing PCMH since the start of the Enforcement Action in 2018. In *Philips V, VI, VII and VIII*, the Plaintiff tried to transfer the Enforcement Action to this venue, but each attempt was unsuccessful. On June 9, 2023 – just 11 days before the Plaintiff filed the Complaint herein, the Superior Court of Guam ordered the Plaintiff to pay $1,000 per month to the Defendants until satisfaction of the judgment entered in the Enforcement Action. *See* Third Decl. Daniel J. Berman at ¶13, ECF No. 21, and Ex. 32 thereto. Since the filing of this lawsuit, the Defendants have had to "delay legal work" in the Enforcement Action. Decl. Daniel J. Berman at ¶ 26, ECF No. 8. Based on an objective view of the history of the Plaintiff's various court cases and filings, the court finds that his action in bringing the instant lawsuit manifests an improper purpose, namely to harass the Defendants and to delay further collection efforts in the Enforcement Action. Accordingly, the undersigned recommends that the Chief Judge impose sanctions on the Defendant pursuant to Rule 11(c)(1) to deter the Plaintiff from repeated future conduct.

### III.    Conclusion

Based on the above analysis, the court finds that the Plaintiff has failed to meet his burden of pleading and proving the existence of either federal question or diversity jurisdiction. Accordingly, the court recommends that the Chief Judge grant the Defendants' Motion to Dismiss

*Sherif A. Philips, MD v. Michael Berman and Daniel Berman.* Civil Case No. 23-00017  
Report and Recommendation re Defendants' Motion to Dismiss and Motion for Sanctions  
page 18 of 18

pursuant to Rule 12(b)(1) because the court lacks subject matter jurisdiction. The undersigned also recommends that the court deny the Plaintiff the ability to file an amended complaint to cure the deficiencies noted because amendment would be futile. If the recommendation to dismiss is adopted by the Chief Judge, the court further recommends that the Plaintiff be sanctioned under Rule 11(c)(1) and be ordered to pay the Defendants' reasonable fees and costs in defending this action. Finally, as noted in footnote 5 *supra*, the court recommends that the Defendants' motions for judicial notice (ECF Nos. 21, 25 and 27) be granted.

IT IS SO RECOMMENDED.



/s/ Michael J. Bordallo  
U.S. Magistrate Judge  
Dated: Apr 04, 2024

**NOTICE**

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**